Deborah De Villa (SBN 312564)
Alyssa Brown (SBN 301313)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585
*ddevilla@ahdootwolfson.com*
*abrown@ahdootwolfson.com*

Andrew W. Ferich (*pro hac vice* to be filed)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Tel: (310) 474-9111
Fax: (310) 474-8585
*aferich@ahdootwolfson.com*

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON DEMMIE, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| SMART ERP SOLUTIONS, INC., | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | |

Plaintiff Jason Demmie, individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to himself and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against Defendant Smart ERP Solutions, Inc. ("SmartERP" or "Defendant").

## NATURE OF THE ACTION

1. Plaintiff brings this class action individually and on behalf of all other individuals who had their sensitive personally identifying information, including but not limited to, names and Social Security numbers (collectively, "Personal Information") disclosed to unauthorized third parties during a data breach compromising SmartERP in July 2024.

2. SmartERP is a software services and solutions corporation based in Pleasanton, California. Founded in 2005, SmartERP provides enterprise resource planning (ERP) services and solutions to organizations across various industries, including government agencies, healthcare, education, manufacturing, and more.[1]

3. On or about July 13, 2024, SmartERP discovered a network security incident that impacted some of its operations. After further investigation with the help of third-party forensic specialists, Defendant discovered unauthorized access to its network between July 3, 2024, and 13, 2024. This unauthorized access resulted in the sensitive Personal Information it held being "accessed and/or acquired by an unauthorized individual" (the "Data Breach").[2]

4. Little information has been made available by SmartERP about the Data Breach. The details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again have not been shared with Plaintiff and Class members, who retain a vested interest in ensuring that their Personal Information remains protected.

5. Defendant was well aware of or should have known of its data security shortcomings. It collects and maintains sensitive Personal Information about its customers, including Social Security

---

[1] https://www.smarterp.com/company/company (last accessed March 16, 2025).
[2] *Submitted Breach Notification Sample,* OFFICE OF THE CALIFORNIA ATTORNEY GENERAL, https://oag.ca.gov/system/files/AG_Sample_-_12_Months_35846424v1.pdf (last accessed March 16, 2025).

1
CLASS ACTION COMPLAINT

numbers ("SSNs") and financial information. It requires customers to provide this highly confidential information in connection with using SmartERP's products and services.

6. Defendant's failures to ensure that its servers and systems were adequately secure fell far short of its obligations and Plaintiff's and Class members' reasonable expectations for data privacy jeopardized the security of Plaintiff's and Class member's Personal Information, and exposed Plaintiff and Class members to fraud and identity theft or the serious risk of fraud and identity theft.

7. As a result of Defendant's conduct and the resulting Data Breach, Plaintiff and Class members' privacy has been invaded, their Personal Information is now in the hands of criminals, they have either suffered fraud or identity theft or face an imminent and ongoing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

8. Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Personal Information that it collected and maintained.

## PARTIES

19. Plaintiff Jason Demmie is an adult citizen of the state of Arizona and resides in Phoenix, Arizona. Plaintiff received a letter from Defendant dated March 11, 2025, notifying him that his Personal Information was accessed and/or acquired by unauthorized third parties in the Data Breach.

20. In or around February 2025, Plaintiff received a letter from the Internal Revenue Service ("IRS") informing Plaintiff that someone filed a tax return in his name. Plaintiff contacted the IRS and disputed this fraudulent activity. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach.

21. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come. Plaintiff has a continuing interest in ensuring that his Personal Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

22. Defendant Smart ERP Solutions, Inc. is a corporation organized under the laws of California with its principal place of business located at 3875 Hopyard Road Ste 180 Pleasanton, California 94588.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class members, the action is a class action in which one or more Class members are citizens of states different from Defendant, and Defendant is not a government entity.

24. The Court has personal jurisdiction over Defendant because Defendant has a principal office in Pleasanton, California, operates in California, conducts other significant business in California, and otherwise has sufficient minimum contacts with and intentionally avails itself of the markets in California.

25. Venue properly lies in this judicial district because, *inter alia,* Defendant has a principal place of business in this district; Defendant transacts substantial business, has agents, and is otherwise located in this district; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

**A. SmartERP Collects and Stores Personal Information**

26. SmartERP is a software services and solutions organization headquartered in Pleasanton, California. SmartERP provides enterprise resource planning (ERP) services and solutions to organizations across various industries, including government agencies, healthcare, education, manufacturing, and more.[3] Founded in 2005, SmartERP touts a workforce of approximately 350 employees, and an estimated annual revenue of $73 million.[4]

---

[3] https://www.smarterp.com/company/about-us (last accessed March 16, 2025).
[4] https://rocketreach.co/smart-erp-solutions-inc-profile_b5cf1b66f42e09e8 (last accessed March 16, 2025).

3
CLASS ACTION COMPLAINT

27. SmartERP routinely collects highly sensitive Personal Information in the process of providing its software products and services.

28. SmartERP takes pride in providing, among other things, "robust Security, Compliance, and SoD (Segregation of Duties) features, ensuring data integrity, regulatory adherence, and prevention of unauthorized access. With advanced access controls, audit trails, and role-based permissions, it safeguards sensitive information, reduces risks, and maintains airtight compliance with industry standard."[5]

29. Defendant is and was aware of the sensitive nature of the Personal Information it collects, and it acknowledges the importance of data privacy. SmartERP's Privacy Policy on its website states, in pertinent part:

> We take appropriate security measures to protect against unauthorized access to or unauthorized alteration, disclosure, or data destruction. These include internal reviews of our data collection, storage, and processing practices and security measures, including appropriate encryption and physical security measures to guard against unauthorized access to systems where we store personal data. We restrict access to personal information to our employees, contractors, and agents who need to know that information to process it on our behalf.[6]

30. SmartERP's Privacy Policy is clear that Defendant was aware of the need to safeguard the sensitive Personal Information entrusted to it by consumers as a necessary part of its business operations.

**B. The Data Breach**

31. On or about July 13, 2024, SmartERP discovered a network security incident that impacted some of its operations. According to the Notice of data breach it filed with the California Attorney General[7], SmartERP experienced a "recent cyber security incident that potentially involved unauthorized access to personal data" it held.[8] Upon detecting the incident, SmartERP "immediately

---

[5] https://www.smarterp.com/solutions/security-compliance-and-sod (March 16, 2025).
[6] https://www.smarterp.com/privacy-policy (last accessed March 16, 2025).
[7] SmartERP also filed a notice of data breach with the attorney generals of Vermont, Texas, and Maine. *See, e.g.,* https://ago.vermont.gov/document/2025-03-11-smart-erp-solutions-data-breach-notice-consumers (Vermont); https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (Texas); https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/82ebcfc6-0c29-4a6a-a55a-c7cf89393a6a.html (Maine).
[8] *See supra* note 2.

4
CLASS ACTION COMPLAINT

commenced a prompt and thorough investigation … to determine whether there was any unauthorized access to protected information."[9]

32. After further investigation with the assistance of third-party forensic specialists, Defendant discovered that there was unauthorized access to its network between July 3, 2024, and 13, 2024. As a result of the Data Breach, Plaintiff and Class members had their most sensitive Personal Information "accessed and/or acquired by an unauthorized individual …."[10]

33. Approximately 8 months later, on or about March 11, 2025, Defendant began sending data breach notification letters to affected individuals.

34. The language in the notices to Class members and the California Attorney General is unequivocal: the Data Breach resulted in an unauthorized individual "accessing" and "acquiring" the Personal Information SmartERP was entrusted.[11]

35. Though SmartERP claims that it is "committed to maintaining the privacy of personal information in [its] possession," it has simply indicated that it is "continuing to take significant measures to protect the personal information entrusted to" it. The details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again have not been shared with Plaintiff and Class members, who retain a vested interest in ensuring that their Personal Information remains protected.

36. To date, Defendant has failed to take adequate steps to protect individuals affected by the Data Breach, instead putting the burden on Plaintiff and Class members to take action to mitigate their damages by, among other things, "placing a fraud alert and/or security freeze on your credit files, and/or obtaining a free credit report." The Notice also encouraged impacted individuals to "always remain vigilant in reviewing your financial account statements and credit reports for fraudulent or irregular activity on a regular basis."[12]

---

[9] *Id*.
[10] *Id*.
[11] *See supra* note 2.
[12] *Id*.

**C.  Impact of the Data Breach**

37. As a result of the Data Breach, Plaintiff and Class members had their most sensitive Personal Information "accessed" and "acquired" by cybercriminals, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, the value of their time reasonably incurred to remedy or mitigate the effects of the attack, and unauthorized use of their Personal Information.

38. The actual extent and scope, and the impact, of the Data Breach on SmartERP's customers (or other affiliated persons) remains uncertain. Unfortunately for Plaintiff and Class members, the damage is already done because their sensitive Personal Information is confirmed by SmartERP to have been disclosed to unauthorized persons during the Data Breach.

39. SmartERP knew or should have known that its affected IT systems and/or servers are unsecure and do not meet industry standards for protecting highly sensitive customer Personal Information. On information and belief, SmartERP failed to timely make changes to its data security systems, privacy policies, and its IT systems and servers, exposing its customers' Personal Information to the risk of theft, identity theft, and fraud.

40. The Data Breach creates a heightened security concern for Plaintiff and Class members because their SSNs, financial information, and other sensitive information was potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of his SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

41. Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. Per the United States Attorney General, Social Security numbers "can be an identity thief's most valuable piece of consumer information."[13] TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I

---

[13] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006), https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.

have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[14]

42. SmartERP had a duty to keep Plaintiff's and Class members' Personal Information confidential and to protect it from unauthorized disclosures. Plaintiff and Class members provided their Personal Information to SmartERP with the understanding that SmartERP would comply with its Privacy Policy and its obligations to keep such information confidential and secure from unauthorized disclosures.

43. Defendant's data security obligations were particularly important given the substantial increase in data breaches in recent years, which are widely known to the public and to anyone in SmartERP's industry of ERP software and solutions.

**D.   Theft of Personal Information Has Serious Consequences for Victims**

44. Data breaches are by no means new, and they should not be unexpected. Business Insider has noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers. . . . Many of them were caused by flaws in . . . systems either online or in stores."[15] It is well known amongst companies that store sensitive personally identifying information that sensitive Personal Information—like SSNs, financial information, tax information, etc.—is valuable and frequently targeted by criminals.

45. These types of attacks should be anticipated by companies that store sensitive and personally identifying information, like SmartERP, and these companies must ensure that data privacy and security practices and protocols are adequate to protect against and prevent known and expected attacks.

---

[14] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (August 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

[15] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1 (last accessed March 16, 2025).

46. Theft of Personal Information is serious. The Federal Trade Commission has warned consumers that identity thieves use Personal Information to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[16]

47. Indeed, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[17]

48. According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[18]

49. Personal Information is a valuable property right.[19] The value of sensitive personal

---

[16] *See* Federal Trade Commission, *What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed March 16, 2025).

[17] *See* FEDERAL TRADE COMMISSION, WARNING SIGNS OF IDENTITY THEFT, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed March 16, 2025).

[18] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN, (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/ (last accessed March 16, 2025).

[19] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

information as a commodity is measurable.[20] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[21]

50. Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

51. Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

52. Consumers place a high value on the privacy of sensitive data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[22]

53. There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[23]

---

[20] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (April 28, 2014), http://www.medscape.com/viewarticle/824192.
[21] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.
[22] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.
[23] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

54. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Personal Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

55. Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[24]

56. It is within this context that Plaintiff and all other Class members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

### E. SmartERP Failed to Act in the Face of a Known Risk of a Data Breach

57. Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable (similar) data breaches, Defendant failed to take reasonable steps to adequately protect Personal Information, leaving its clients (and potentially others) exposed to risk of fraud and identity theft.

58. SmartERP is, and at all relevant times has been, aware that the sensitive Personal Information it handles and stores in connection with providing software services and products is highly sensitive. As a company that requires consumers to provide highly sensitive and identifying information, SmartERP is aware of the importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

59. SmartERP was aware, or should have been aware, of regulatory and industry guidance regarding data security, and was alerted to the risk associated with failing to ensure that Personal Information was adequately secured.

60. Despite the well-known risks of hackers and cybersecurity intrusions, Defendant failed to employ adequate data security measures in a meaningful way in order to prevent breaches, including the Data Breach.

---

[24] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.

61. The security flaws inherent to Defendant's IT systems or servers run afoul of industry best practices and standards. Had Defendant adequately protected and secured its servers or systems, and the sensitive Personal Information stored therein, it could have prevented the Data Breach.

62. Despite the fact that SmartERP was on notice of the very real possibility of data theft, including through a prior data breach, it still failed to make necessary changes, and permitted a massive intrusion to occur that resulted in disclosure of Plaintiff's and approximately 78,713 other Class members' Personal Information to criminals.[25]

63. Defendant permitted Class members' Personal Information to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.

64. Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[26]

65. As a result of the events detailed herein, Plaintiff and Class members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

66. Victims of the Data Breach have likely already experienced harms and are subject to an imminent and ongoing risk of harm, including identity theft and fraud.

67. As a result of SmartERP's failure to ensure that its impacted systems and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiff's and Class

---

[25] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/82ebcfc6-0c29-4a6a-a55a-c7cf89393a6a.html (last accessed March 16, 2025).

[26] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, REUTERS (May 30, 2017), https://www.reuters.com/article/idUSKBN18M2BY/.

members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## CLASS ALLEGATIONS

68. Plaintiff brings this action on behalf of himself and the following Class pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **Nationwide Class**
> All residents of the United States who were impacted by the Data Breach, including all persons who were sent notice by SmartERP that their Personal Information was compromised as a result of the Data Breach.

69. Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant, or its parents, have a controlling interest, and its current or former officers and directors.

70. **Numerosity**: While the precise number of Class members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable, as the proposed Class appear to include 78,713 members who are geographically dispersed.[27]

71. **Typicality**: Plaintiff's claims are typical of Class members' claims. Plaintiff and all Class members were injured through Defendant's uniform misconduct, and Plaintiff's claims are identical to the claims of the Class members they seek to represent. Accordingly, Plaintiff's claims are typical of Class members' claims.

72. **Adequacy**: Plaintiff's interests are aligned with the Class Plaintiff seeks to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously. The Class' interests are well represented by Plaintiff and undersigned counsel.

---

[27] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/82ebcfc6-0c29-4a6a-a55a-c7cf89393a6a.html (last accessed March 16, 2025).

73. **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class member's claims. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class members individually to effectively redress Defendant's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

74. **Commonality and Predominance:** The following questions common to all Class members predominate over any potential questions affecting individual Class members:

- whether Defendant engaged in the wrongful conduct alleged herein;
- whether Defendant's data security practices resulted in the disclosure of Plaintiff's and other Class members' Personal Information and the Data Breach;
- whether Defendant violated privacy rights and invaded Plaintiff's and Class members' privacy; and
- whether Plaintiff and Class members are entitled to damages, equitable relief, or other relief and, if so, in what amount.

75. Given that Defendant engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

76. **Injunctive and Declaratory Relief:** Consistent with Fed. R. Civ. P. 23(b)(2), Defendant, through its conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

# CAUSES OF ACTION

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

77. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

78. Defendant was entrusted with, stored, and otherwise had access to the Personal Information of Plaintiff and Class members.

79. Defendant knew, or should have known, of the risks inherent to storing the Personal Information of Plaintiff and Class members, and to not ensuring that its servers and systems, and the Personal Information, was secure. These risks were reasonably foreseeable to Defendant, including because Defendant has previously experienced a data breach.

80. Defendant owed duties of care to Plaintiff and Class members whose Personal Information had been entrusted to it.

81. Defendant breached its duties to Plaintiff and Class members by failing to provide fair, reasonable, or adequate data security. Defendant had a duty to safeguard Plaintiff's and Class members' Personal Information and to ensure that it adequately protected Personal Information. Defendant breached this duty.

82. SmartERP's duty of care arises from its knowledge that its customers entrust it with highly sensitive Personal Information that SmartERP is required to, and represents that it will, handle securely. Indeed, on its website, SmartERP commits to data privacy in its Privacy Policy, including safeguarding sensitive Personal Information.

83. Only SmartERP was in a position to ensure that its systems, servers, and services were sufficient to protect against breaches and the harms that Plaintiff and Class members have now suffered.

84. A "special relationship" exists between Defendant, on the one hand, and Plaintiff and Class members, on the other hand. Defendant entered into a "special relationship" with Plaintiff and Class members by agreeing to accept, store, and have access to sensitive Personal Information provided by Plaintiff and Class members in connection with obtaining SmartERP's products and/or services.

85. But for Defendant's wrongful and negligent breach of their duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

86. Defendant acted with wanton disregard for the security of Plaintiff's and Class members' Personal Information.

87. The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known it was failing to meet these duties, and that Defendant's breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their Personal Information.

88. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class members have been harmed and face an imminent and ongoing risk of harm.

89. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT II**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

90. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

91. SmartERP provided or provides software products and services, and Plaintiff and Class members provided their Personal Information to SmartERP as customers or in otherwise transacting with Defendant.

92. In connection with their business relationship, Plaintiff and Class members entered into implied contracts with SmartERP.

93. Pursuant to these implied contracts, Plaintiff and Class members provided SmartERP with their Personal Information. In exchange, SmartERP agreed, among other things: (1) to take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' Personal Information; and (2) to protect Plaintiff's and Class members' Personal Information in compliance with federal and state laws and regulations and industry standards.

94. The protection of Personal Information was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and SmartERP, on the other hand. Had Plaintiff and Class members known that SmartERP would not adequately protect its customers' Personal Information they would not have done business with SmartERP.

95. Plaintiff and Class members performed their obligations under the implied contract when they provided SmartERP with their Personal Information.

96. Necessarily implicit in the agreements between Plaintiff/Class members and Defendant was SmartERP's obligation to take reasonable steps to secure and safeguard Plaintiff's and Class members' Personal Information.

97. Defendant breached its obligations under its implied contracts with Plaintiff and Class members by failing to implement and maintain reasonable security measures to protect their Personal Information.

98. Defendant's breach of its obligations of its implied contracts with Plaintiff and Class members directly resulted in the Data Breach.

99. The damages sustained by Plaintiff and Class members as described above were the direct and proximate result of Defendant's material breaches of its agreements.

100. Plaintiff and other Class members were damaged by Defendant's breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Personal Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Personal Information has been breached; (v) they were deprived of the value of their Personal Information, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the breach, including the increased risks of identity theft they face and will continue to face.

## COUNT VIII
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

101. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

102. This claim is pleaded in the alternative to the implied contract claim.

103. SmartERP has profited and benefited from the monies or fees paid and the Personal Information provided by Plaintiff and Class members to receive services from SmartERP.

104. SmartERP has voluntarily accepted and retained these profits and benefits with full

1  knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff
2  and Class members did not receive services of the quality, nature, fitness, or value represented by
3  SmartERP and that reasonable consumers expected.
4      105.   SmartERP has been unjustly enriched by its withholding of and retention of these benefits,
5  at the expense of Plaintiff and Class members.
6      106.   Equity and justice militate against permitting SmartERP to retain these profits and
7  benefits.
8      107.   Plaintiff and Class members suffered injury as a direct and proximate result of
9  SmartERP's unjust enrichment and seek an order directing SmartERP to disgorge these benefits and pay
10 restitution to Plaintiff and Class members.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Class, by and through undersigned counsel, respectfully request that the Court grant the following relief:

A. Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as class representative and undersigned counsel as class counsel;

B. Award Plaintiff and Class members actual and statutory damages, punitive damages, and monetary damages to the maximum extent allowable;

C. Award declaratory and injunctive relief as permitted by law or equity to assure that Class members have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

D. Award Plaintiff and Class members pre-judgment and post-judgment interest to the maximum extent allowable;

E. Award Plaintiff and Class members reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Award Plaintiff and Class members such other favorable relief as allowable under law or at equity.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: March 18, 2025     By:     */s/ Deborah De Villa*
Deborah De Villa (SBN 312564)
Alyssa Brown (SBN 301313)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585
*ddevilla@ahdootwolfson.com*
*abrown@ahdootwolfson.com*

Andrew W. Ferich (*pro hac vice* to be filed)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Tel: (310) 474-9111
Fax: (310) 474-8585
*aferich@ahdootwolfson.com*